# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION
## CIVIL ACTION NO. 4:18-CV-00056-HBB

SCOTT L. BURTON                                                          PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                          DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Scott L. Burton ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN 19) and Defendant (DN 22) have filed a Fact and Law Summary.   Additionally, Defendant has filed a notice of supplemental authority (DN 23).   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the

1

Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered July 17, 2018 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff protectively filed an application for Disability Insurance Benefits on January 9, 2015 (Tr. 64, 210-13). Plaintiff alleged that he became disabled on June 13, 2014 because of ankylosing spondylitis, and diabetes (type II), sleep apnea, elevated white and red blood cell count, anxiety, and depression (Tr. 64, 232). On May 31, 2017, Administrative Law Judge Jennifer B Thomas ("ALJ") conducted a video hearing from Paducah, Kentucky (Tr. 64, 85). Plaintiff and her attorney, Sara J. Martin, participated from Owensboro, Kentucky (Id.). James Adams, M.A., testified as an impartial vocational expert during the administrative hearing (Id.).

In a decision dated October 12, 2017 the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner[1] (Tr. 64-77). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 13, 2014, the alleged onset date[2] (Tr. 67). At the second step, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease, ankylosing spondylitis, fibromyalgia,

---

[1] The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2020 (Tr. 67).

[2] Plaintiff received private insurance disability payments in 2014 through 2016 (Tr. 67). This income was not considered substantial gainful activity (Id.).

and anxiety (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform sedentary work except he can sit for 45 minutes at a time and stand/walk for 45 minutes at a time; he can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; he can frequently balance and occasionally stoop, kneel, crouch, and crawl; he needs to avoid concentrated exposure to cold, heat, humidity, and wetness; he needs to avoid pulmonary irritants such as gases, dust, odors, and poor ventilation; he needs to avoid concentrated exposure to vibration; he needs to avoid all exposure to moving mechanical parts and unprotected heights; he can understand, remember and carry out simple, routine tasks for two-hour segments in an eight-hour workday; he can have occasional interactions with coworkers, supervisors, and the public; any changes in the workplace should be rare or gradually introduced (Tr. 69). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable perform any of his past relevant work (Tr. 75).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 75-76). The ALJ found that Plaintiff can perform a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from June 13, 2014, through the date of the decision (Tr. 76).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 208-09). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age,

education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

## Challenged Findings

Plaintiff disagrees with Finding Nos. 4, 5, and 10 (DN 19). Regarding Finding No. 4, he contends that substantial evidence supports a finding that his ankylosing spondylitis met Listing 14.09 (DN 19-1 PageID # 932-33). As to Finding No. 5, Plaintiff asserts substantial evidence does not support the ALJ's residual functional capacity (RFC) finding that he could perform sedentary work (Id. PageID # 934-35). Regarding Finding No. 10, Plaintiff contends substantial evidence does not support the ALJ's finding that jobs existed in the regional or national economy consistent with the adopted RFC (Id. PageID # 935-37). Alternatively, Plaintiff contends the Court should order a prejudgment remand, pursuant to sentence six of 42 U.S.C. § 405(g), as to new and material evidence submitted to, but disregarded by, the Appeals Council (Id. PageID # 937-38).

## A.

Plaintiff challenges Finding No. 4 because he believes substantial evidence supports a finding that his ankylosing spondylitis meet Listing 14.09C and 14.09D (DN 19-1 PageID # 932-33). Defendant contends the ALJ properly found that Plaintiff did not meet Listing 14.09C or 14.09D for inflammatory arthritis (DN 22 PageID # 999-1003).

At the third step, a claimant has the burden of demonstrating he has an impairment that meets or medically equals a listing in Appendix 1. *See* 20 C.F.R. § 404.1520(d); Burgess v. Sec'y of Health & Human Servs., 835 F.2d 139, 140 (6th Cir. 1987). To meet a listing in Appendix 1,

the medical records regarding the impairment must satisfy both the diagnosis and severity requirements for the listing. *See* 20 C.F.R. § 404.1525(d); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984). If the impairment does not meet the severity requirements of a listing, then the Administrative Law Judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's impairment(s) medically equal a listed impairment. *See* 20 C.F.R. § 404.1526(a) and (b); Social Security Ruling 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).

The listing at issue in pertinent part reads:

14.09 Inflammatory arthritis. As described in 14.00D6. With:

. . .

C. Ankylosing spondylitis or other spondyloarthropathies, with:

1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or

2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

or

D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listings 14.09C and 14.09D.

The ALJ considered ankylosing spondylitis under Listing 14.09C and 14.09D (Tr. 67-68). The ALJ concluded that physical examinations in the record did not measure 45 degrees of flexion from the vertical position (zero degrees) or 30 degrees or more of flexion measured from the vertical position with involvement of two or more organs/body systems with one of the organs/body systems of at least moderate severity (Id.). Additionally, the ALJ found there was "no evidence to support marked limitations in activities of daily living, social functioning, or concentration, persistence, and pace due to constitutional systems or signs (severe fatigue, fever, malaise, or involuntary weight loss)" (Tr. 68).

Plaintiff cites a November 2, 2016 MRI of his thoracic spine in support of his assertion that over the years his ankylosing spondylitis has worsened (DN 19-1 PageID # 932-33, citing Tr. 699-700). Plaintiff's reliance on this MRI is misplaced because Listing 14.09C requires the ankylosis spondylitis be in the dorsolumbar or cervical spine (Tr. 699-700). Notably, the October 25, 2016 MRI of Plaintiff's cervical spine showed no evidence of ankylosing spondylitis in Plaintiff's

cervical spine (Tr. 701-02). In sum, Plaintiff has not shown by appropriate medically acceptable imaging that he has ankylosis (fixation) of the dorsolumbar or cervical spine as required by Listing 14.09C.

Next, Plaintiff has not cited any medical evidence in the record supporting his bare assertion that at nearly every visit he had limited range of motion and limited flexion (DN 19-1 PageID # 932-33). More importantly, he has not cited any medical evidence in the record showing fixation of the dorsolumbar or cervical spine at the required angle of flexion from the vertical position (either 45 degrees, or 30 degrees) as required by Listing 14.09C. In sum, the ALJ's findings regarding Listing 14.09C are supported by substantial evidence in the record and comport with applicable law (Tr. 67-68).

Regarding Listing 14.09D, Plaintiff has not cited any medical evidence in support of his bare assertion that his medical records and testimony establish this condition affects many areas of his life including daily living activities, social functioning, and ability to concentrate (Id.). By contrast, substantial evidence in the record supports the ALJ's determination that "there is no evidence in the record to support marked limitations in activities of daily living, social functioning, or concentration, persistence or pace due to constitutional [symptoms] or signs (severe fatigue, fever, malaise, or involuntary weight loss)" (Tr. 68). In sum, the ALJ's findings regarding Listing 14.09D are supported by substantial evidence in the record and comport with applicable law (Tr. 67-68).

### B.

Next, Plaintiff challenges Finding No. 5 because he believes substantial evidence in the record does not support the ALJ's residual functional capacity (RFC) finding that he could perform

sedentary work (DN 19-1 PageID # 934-35).   Defendant asserts that substantial evidence supports the ALJ's sedentary RFC finding (DN 22 PageID # 1003-07).

The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946.   The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946.   Thus, in making the RFC finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1527(c), 404.1529, 416.927(c), 416.929.

Here, the ALJ found Plaintiff has the RFC to perform less than a full range of sedentary work because of articulated exertional, postural, environmental, and mental limitations (Tr. 69). Plaintiff asserts the ALJ failed to fully consider the resulting limitations from his ankylosis spondylitis including his inability to sit, stand, and/or walk for long periods of time (DN 19-1 PageID # 934-35).   Defendant asserts that the ALJ found Plaintiff could stand and walk for only two hours total in an eight-hour workday (DN 22 PageID # 1004).

The Court agrees with Defendant but notes this finding is not expressly stated in the RFC (*see* Tr. 69).   Instead, it is implied when the reader considers the RFC and applicable law together. Specifically, 20 C.F.R. § 404.1567(a) indicates that sedentary work involves only "occasionally" walking and standing.   Further, SSR 83-10 explains that "occasionally" means "periods of standing and walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours in an 8-hour workday."   SSR 83-10, 1983

WL 31251, at *5 (1983). Thus, the RFC includes an implicit finding that Plaintiff can stand/walk a total of no more than 2 hours and sit a total of six hours in an eight-hour work day. Additionally, the RFC expressly limits Plaintiff to sitting for 45 minutes at a time and standing/walking for 45 minutes at a time (Tr. 69). The RFC also sets forth postural, environmental, and mental limitations that address limitations imposed by Plaintiff's severe impairments, including ankylosis spondylitis (Tr. 69). Interestingly, the ALJ considered the Remicade infusions administrated every eight weeks but noted the treatment notes did not substantiate Plaintiff's testimony about the infusions being hard on him (Tr. 73). Thus, the ALJ's RFC assessment fully considered the limitations imposed by Plaintiff's ankylosis spondylitis. Further, those findings are supported by substantial evidence in the record and comport with applicable law.

Next, Plaintiff argues that the RFC failed to address the limitations imposed by his diabetes and diabetic neuropathy[3] (DN 19-1 PageID # 934-35). This claim will be deemed waived because Plaintiff has adverted to it in a perfunctory manner with no developed supporting argument and no citation to supporting medical evidence in the record. *See* United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion). Notwithstanding, the ALJ

_____

3 To the extent Plaintiff accuses the ALJ of failing to consider whether his diabetes and diabetic neuropathy constitute a severe impairment (DN 19-1 PageID # 934), the claim is waived because it was "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion).

reviewed the medical evidence and found that Plaintiff's diabetes mellitus "was well-controlled at this time" (Tr. 69). The ALJ also found there "are no diagnostic studies of record to confirm neuropathy nor are there sensory deficits on examination" (Id.). From the above findings, it can reasonably be implied that the ALJ considered these conditions in making the RFC assessment, but she concluded they do not impose any limitations. The ALJ's findings are supported by substantial evidence in the record and comport with applicable law.

C.

Moving on to the fifth step, Plaintiff challenges Finding No. 10 by contending substantial evidence does not support the ALJ's determination that a significant number of jobs exist in in the regional or national economy that Plaintiff can perform given the adopted RFC (DN 19-1 PageID # 935-37). Relying on the Sixth Circuit's holding in Cunningham v. Astrue, 360 F. App'x 606 (6th Cir. 2010) and current vocational summaries in O*NET, Plaintiff asserts that the vocational expert's testimony does not constitute substantial evidence because it is based on obsolete job descriptions in the Dictionary of Occupational Titles (DOT) (DN 19-1 PageID # 935-37). Alternatively, Plaintiff contends the three identified jobs only total 5,480 regionally which does not qualify as "significant" (Id. PageID # 936).

Defendant contends this claim is forfeited because it could and should have been presented to the ALJ either through cross-examination of the vocational expert, submitting a post-hearing brief, or by requesting the ALJ submit post-hearing interrogatories to the vocational expert (DN 22 PageID # 1008-11, citing Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 636 (6th Cir. 2016; Beinlich v. Comm'r of Soc. Sec., 345 F. App'x 163, 168-69; Ledford v. Astrue, 311 F. App'x 746, 757 (6th Cir. 2008)). Alternatively, Defendant explains why job descriptions and SVP levels in

the O*NET are ill-suited for determining whether the DOT descriptions are obsolete and for making disability determinations (Id. PageID # 1011-15, 1020-22). Defendant emphasizes that the ALJ was not required to identify and resolve conflicts between the vocational expert's testimony and information in O*NET or conflicts between information in the DOT and O*NET (Id. PageID # 1015-20, citing SSR 00-4p, Poe v. Comm'r Soc. Sec., 342 F. App'x 149, 158 (6th Cir. 2009) (SSR 00-4p requires Administrative Law Judges to address and resolve conflicts between a vocational expert's testimony and information in the DOT but not information from the Occupational Outlook Handbook), Cunningham v. Astrue, 360 F. App'x 606, 614-15 (6th Cir. 2010) (relied on O*NET solely to assess whether the DOT occupations still existed)). Defendant points out that the vocational expert testified only to the number of jobs nationwide, not regionally as Plaintiff claims (Id. PageID # 1022-24).

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the local, regional and national economies that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). The Commissioner may meet this burden by relying on a vocational expert's testimony provided it constitutes substantial evidence. See Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Davis v. Sec'y of Health & Human Servs., 915 F.2d 186, 189 (6th Cir. 1990); Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

The Court will begin with Defendant's argument that this claim is forfeited because it could and should have been raised before the ALJ either through cross-examination of the vocational expert, submitting a post-hearing brief, or by requesting the ALJ submit post-hearing interrogatories to the vocational expert (DN 22 PageID # 1008-11). In several previous cases before this Court, plaintiffs have argued the vocational expert's testimony does not constitute substantial evidence because it was based on obsolete DOT job descriptions. *See* Wright v. Berryhill, No. 4:18-CV-00021-HBB, 2019 WL 498855, at *6-9 (W.D. Ky. Feb. 8, 2019); Sorrell v. Berryhill, 4:18-CV-00029-HBB, 2019 WL 360523, at *7-13 (W.D. Ky. Jan. 29, 2019); Gordon v. Berryhill, 4:18-CV-00055-HBB, 2019 WL 360525, at *6-11 (W.D. Ky. Jan. 29, 2019); Thorpe v. Berryhill, No. 4:18-cv-00033-JHM-HBB, (W.D. Ky. Dec. 19, 2018, DN 17 PageID # 1702-08 Report and Recommendation) (Feb. 12, 2019, DN 18 Order adopting); Williams v. Berryhill, No. 4:18-cv-00017-HBB, 2018 WL 6528471, at *7-10 (W.D. Ky. Dec. 12, 2018); Bloodworth v. Berryhill, 4:17-CV-00104-HBB, 2018 WL 2435427, at *9-14 (W.D. Ky. May 30, 2018); Moore v. Berryhill, No. 4:17-CV-00091-HBB, 2018 WL 1323127, at *8-14 (W.D. Ky. Mar. 14, 2018); Hamilton v. Berryhill, No. 4:17-CV-00053-HBB, 2018 WL 1324163, at *3-8 (W.D. Ky. Mar. 14, 2018); Johnson v. Comm'r of Soc. Sec., No. 4:16-CV-106, 2017 WL 2454326, at *3-8 (W.D. Ky. June 6, 2017).

In seven of the above cases, Defendant argued the claim had been forfeited or waived by the failure to raise it through cross-examination of the vocational expert during the administrative hearing. *See* Wright, 2019 WL 498855, at *6 (forfeited); Sorrell, 2019 WL 360523, at *7 (forfeited); Gordon, 2019 WL 360525, at *7; Thorpe, No. 4:18-cv-00033-JHM-HBB (R&R PageID # 1702); Williams, 2018 WL 6528471, at *7 (waiver); Hamilton, 2018 WL 1324163, at

14

*4 (waiver); <u>Johnson</u>, 2017 WL 2454326, at *5 (waiver). [4]   The Court concluded the circumstances in these seven cases were distinguishable from the circumstances in the forfeiture and waiver cases cited by Defendant.  <u>Id.</u>  Specifically, the Court noted that Defendant cited cases where the claimant was familiar enough with the information at issue to broach the subject on cross-examination of the vocational expert.  <u>Id.</u>  The Court explained—due to the thousands of vocational descriptions in the DOT and the lack of prior notice regarding which three would be identified during the hearing—the plaintiffs in these seven cases would not have been familiar enough with the information to effectively cross-examine the vocational expert about obsolescence of the DOT descriptions "on the fly."  <u>Id.</u>  The Court indicated to effectively cross-examine the vocational expert the plaintiffs would have needed to conduct research on the DOT and O*NET after the vocational expert identified the jobs.  <u>Id.</u>  But the Court recognized that it would be impractical to conduct such research during the hearing.  <u>Id.</u>  The Court explained this would place an unreasonable burden on the plaintiffs.  <u>Id.</u>  Therefore, in each of the seven cases, the Court concluded Defendant's forfeiture or waiver argument failed.  <u>Id.</u>

Defendant argues the circumstances in Plaintiff's case distinguish it from the seven cases above (DN 22 PageID # 1008-11).  Specifically, Defendant contends that "Plaintiff's counsel was familiar with arguments involving DOT obsolescence and the use of O*NET at the time of the hearing in May 2017, because she raised them before this Court in January 2017" (<u>Id.</u> citing <u>Johnson</u>, 4:16-CV-106, DN 11-1 PageID # 599-601).  Defendant asserts that on cross-examination Plaintiff's counsel "could have asked [the vocational expert] about DOT obsolescence

_____

4 In the seven sentences that follow, the Court will use <u>Id.</u> to refer collectively to these seven cases.

generally, about the use of O*NET generally, about whether the identified occupations in the DOT had comparable positions in O*NET, about the requirements of those jobs in O*NET, and about the validity and reliability of using O*NET in disability adjudication" (Id. PageID # 1010). Defendant suggests that Plaintiff's counsel could have asked such general questions without needing to be familiar with specific DOT and O*NET descriptions in advance or conducting research during the hearing (Id.). Alternatively, Defendant contends that counsel had four months between Plaintiff's hearing in May 2017 and the ALJ's decision in October 2017 to raise the issue of obsolete DOT job descriptions in a post-hearing brief to the ALJ or to request the ALJ submit post-hearing interrogatories to the vocational expert (Id.).

The Court observes that the same attorney represented both Plaintiff and Rebecca Johnson before an Administrative Law Judge and this Court (see Burton, 4:18-CV-00056-HBB and Johnson, 4:16-CV-00106-HBB). While representing Ms. Johnson before this Court, counsel filed a memorandum on January 16, 2017 (see Johnson 4:16-CV-106, DN 11-1). It included an argument that the vocational expert's testimony did not constitute substantial evidence because it was based on obsolete DOT job descriptions for ticket taker (DOT No. 344.667-010) and monogram machine tender (DOT No. 583.685-046) which were last updated in 1980 and 1977, respectively (see Johnson 4:16-CV-106, DN 11-1 PageID # 599-601). The memorandum substantiated this assertion by explaining the results of searches for these jobs on O*NET, the Department of Labor's most current vocational resource (Id.).

More than four months later, on May 31, 2017, counsel represented Plaintiff in his administrative hearing (Tr. 83). In response to the ALJ's hypothetical question, the vocational expert opined the individual could perform the work of a puller through, or a turner in the garment

industry (DOT No. 782.687-030), which is a sedentary unskilled job with an SVP of 1 and there are 100,000 jobs nationwide; a weight tester (DOT No. 539.485-010), which is a sedentary unskilled job with an SVP of 2 and there are 150,000 jobs nationwide; and a dial marker (DOT No. 729.684-018), which is a sedentary unskilled job with an SVP of 2 and there are 24,000 jobs nationwide (Tr. 115). Plaintiff's counsel asked only one question on cross-examination (Tr. 116). Specifically, whether even two additional 15-minute breaks throughout an eight-hour workday would preclude the hypothetical individual from performing past work or other work in the national economy (Id.).

Interestingly, while reading a Supreme Court opinion issued on April 1, 2019, the Court became aware of a handbook the Social Security Administration gives to vocational experts. *See* Biestek v. Berryhill, ___ U.S. ___, 139 S.Ct. 1148, 2019 U.S. LEXIS 2480, at *13 n. 2 (2019) (quoting SSA, Vocational Expert Handbook p. 37 (Aug. 2017)[5]). In pertinent part, the handbook directs:

> You should be prepared to provide a complete explanation for your answers to hypothetical questions and other questions. **You should have available, at the hearing, any vocational resource materials that you are likely to rely upon** and should be able to thoroughly explain what resource materials you used and how you arrived at your opinions. In some cases, the ALJ may ask you to provide relevant portions of materials you rely upon.

SSA, Vocational Expert Handbook p. 37 (Aug. 2017).[6] Further, in Biestek, the Supreme Court noted that "[e]ven without specific data, an applicant may probe the strength of testimony by

---

[5] https://www.ssa.gov/appeals/public_experts/Vocational_Experts_ (VE)_Handbook-508.pdf

[6] Id.

asking an expert about (for example) her sources and methods—where she got the information at issue and how she analyzed it and derived her conclusions."   2019 U.S. LEXIS 2480, at *16-17 (*see*, *e.g.*, Chavez v. Berryhill, 895 F.3d 962, 969–970 (7th Cir. 2018)).

Considering the temporal and issue nexuses that exist between counsel's involvement in both cases, the instructions in the agency's own handbook, and the Supreme Court's recent observation in Biestek, the Court agrees in principle with Defendant's argument that the circumstances here are distinguishable from those in the seven cases mentioned above.   By May 31, 2017, Plaintiff's counsel was familiar enough with the information at issue to broach the subject on cross-examination of the vocational expert.   For example, counsel was aware and, through cross-examination of the vocational expert, could have made the ALJ aware that the DOT had not been updated by the Department of Labor since 1991.[7]   Additionally, Counsel was aware the trailer that follows each DOT occupational description includes information such as the SVP (Specific Vocational Preparation) and the DLU (Date Last Updated).[8]   Provided the vocational expert brought to the hearing the vocational resource materials he was likely to rely upon, counsel could have asked the vocational expert to look up the DLU designations for the puller-through (DOT 782.687-030), weight tester (DOT 539.485-010), and dial maker (DOT 729.684-018) job descriptions.   The DLU designations indicate all three job descriptions have not been updated since 1977.[9]   Thus, through cross examination, Counsel could have made the ALJ aware that the

---

7  https://www.oalj.dol.gov/LIBDOT.HTM

8  http://www.occupationalinfo.org/appendxc_1.html

9  https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT07F.HTM; https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT05D.HTM; https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT07C.HTM

vocational expert was relying on occupational descriptions that are approximately 40 years old. If the vocational expert did not bring the necessary resources to look up the DLU designations for these three jobs, counsel could have asked the vocational expert about DOT obsolescence generally.

Counsel would have also been aware and, through cross-examination of the vocational expert, made the ALJ aware that the United States Department of Labor replaced the DOT with O*NET.[10]  Counsel then could have asked the vocational expert if he brought to the hearing the vocational resource materials necessary to utilize the DOT Crosswalk Search Option on O*NET.[11] If the vocational expert answered in the affirmative, counsel could have requested the vocational expert perform such a search to assess whether the O*NET had more current information regarding the puller-through (DOT 782.687-030), weight tester (DOT 539.485-010), and dial maker (DOT 729.684-018) job descriptions.   If the vocational expert responded in the negative, counsel could have asked the vocational expert about the DOT generally, including whether the identified occupations in the DOT had comparable positions in O*NET and what he knew about the O*NET descriptions for those positions.

For the above reasons, the Court concludes that Plaintiff forfeited this claim by failing to raise it before the ALJ through cross-examination of the vocational expert.

---

10 https://www.onetcenter.org/dataCollection.html; and https://www.oalj.dol.gov/LIBDOT.HTM

11 https://www.onetonline.org/

D.

Alternatively, Plaintiff contends the Court should order a prejudgment remand, pursuant to sentence six of 42 U.S.C. § 405(g), as to evidence disregarded by the Appeals Council when it denied his request for review (DN 19-1 PageID # 937-38).   Specifically, Plaintiff is referring to a Functional Capacity Evaluation (FCE) conducted on November 28, 2017, "immediately after the ALJ's decision" (Id.).   Defendant argues that Plaintiff is not entitled to a prejudgment remand because he did not satisfy his burden of showing the evidence is material and that good cause exists for his failure to previously acquire and submit the evidence (DN 22 PageID # 1024-27).

Sentence six of 42 U.S.C. § 405(g) authorizes a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the ALJ.   *See* Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991), Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 483 (6th Cir. 2006); Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174-75 (6th Cir. 1994).   Here, the parties agree the evidence is new.   They dispute whether the evidence is material and whether there is good cause for Plaintiff's failure to incorporate such evidence into the record before the ALJ.

Evidence is "material" if there is "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." Ferguson, 628 F.3d at 276; Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988).   Notably, evidence is not considered material if it merely depicts an aggravation or deterioration in an existing condition.   Sizemore, 865 F.2d at 712.

Plaintiff argues the FCE is material because it was conducted on November 28, 2017, just one month after the ALJ's decision on October 12, 2017, and it speaks directly to his physical limitations that have been in place for many years (DN 19-1 PageID # 937-38). Plaintiff contends the FCE specifically notes the difficulty he has regarding sitting, standing, and walking after short periods of time (Id.).

Defendant asserts that the FCE and physical RFC Questionnaire are not material (DN 22 PageID # 1024-27). Defendant points out the FCE was conducted and RFC Questionnaire was filled out on November 28, 2017, more than a month after the ALJ's decision on October 12, 2017 (Id.). Defendant explains the FCE only measured Plaintiff's status on that date and did not purport to address Plaintiff's condition prior to the ALJ's decision

After reviewing the evidence, the Court agrees with Defendant. The FCE and physical RFC Questionnaire address Plaintiff's limitations on November 28, 2017, more than a month and two weeks after the ALJ's decision. Further, nothing in the evidence expressly relates these limitations back to the time frame addressed in the ALJ's decision, June 13, 2014 through October 12, 2017 (Tr. 76). Thus, Plaintiff has not demonstrated the evidence is material.

"Good cause" is demonstrated by showing a reasonable justification for the failure to acquire and present the evidence to the Administrative Law Judge. Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001). The Sixth Circuit has also indicated that "good cause" is "shown if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." Koulizos v. Sec'y of Health & Human

<u>Servs.</u>, No. 85-1654, 1986 WL 17488, at *1 (6th Cir. Aug. 19, 1986) (citing <u>Wilson v. Sec'y of</u> <u>Health & Human Servs.</u>, 733 F.2d 1181 (6th Cir. 1984) and <u>Willis v. Sec'y of Health & Human</u> <u>Servs.</u>, 727 F.2d 551 (6th Cir. 1984)).

Plaintiff explains that at the time the FCE was requested, there was a delay in scheduling (DN 19-1 PageID # 937-38).   Plaintiff points out that the FCE was conducted on November 28, 2017, just on month after the ALJ's decision on October 12, 2017.   Defendant contends that Plaintiff cannot satisfy the good cause requirement because he has not explained why he did not acquire and present the FCE and related RFC Questionnaire to the ALJ (DN 22 PageID # 1024-27).

The Court agrees with Defendant.   In reaching this conclusion, the Court notes that the ALJ conducted the hearing on May 31, 2017 and issued her decision on October 12, 2017 (Tr. 62-77, 83).   Plaintiff's memorandum has not identified when, in relation to these two dates, counsel requested the FCE.   The evidence does, however, include a letter dated November 1, 2017 (DN 19-2 at p. 44).   In the letter counsel asks Plaintiff to take the Physical Residual Functional Capacity Questionnaire to his rheumatologist to determine if the doctor will fill out the form (<u>Id.</u>). This letter indicates the evidence was requested after Plaintiff received the ALJ's unfavorable decision.   Additionally, the letter shows the new evidence did not arise from continued medical treatment of a condition.   Rather, it was generated merely for the purpose of attempting to prove disability.   Thus, Plaintiff has not demonstrated good cause.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

Copies:        Counsel